Case 125-5309, Gun Owners of America, Inc. and Gun Owners Foundation Appellants v. Bureau of Alcohol, Tobacco, Firearms, and Explosives. Mr. Olson for the appellants, Mr. Boldy for the appellate. Good morning. Rob Olson on behalf of Plaintiff Appellants. I'd like to save three minutes for rebuttal if I could. As Justice Brennan wrote in 1983, even a short-lived gag order causes irreparable injury so long as it remains in effect. Well, the gag order in this case has been in effect for 28 months. During that time, plaintiffs have been prohibited from printing the news about a secret government surveillance program. Plaintiffs have been prohibited from communicating with their members who may have been the victims of this unlawful surveillance. Plaintiffs' lawyers have been prohibited from communicating with their clients about that production. And since I was the one who originally reviewed that production before the gag order was entered, I'm ordered to not even have the thoughts in my head. I don't exactly know what that means. I don't know how to comply with that. I don't know how to unknow something. This is a quintessential Hornbook prior restraint. As a Florida judge said in a similar case, you've only got to look so far as the Pentagon Papers to know that there was no basis for this relief to have even been requested. The Supreme Court said that for approximately 150 years of this nation's history, there was an entire absence of attempts to impose prior restraints. And in that 1971 Pentagon Papers case, the court said never before has such thing even been tried. Mr. Olson, the District Court's protective order was entered before the so-called 14th production was made. And the government has been unambiguous in providing the information that I guess is the information that was assertedly initially subject to Exemptions 3 and 7E. It's voluntarily provided it and said, basically, here you go. So I'm not sure that I follow why the plaintiffs think that they're prevented from using the information. I know you pointed to information as opposed to the source of it. But given the sequence and, you know, the government, they see HRDC, they respond. They're like, okay, you can have this. If that's right, then you don't have any claims. I get it in an abundance of caution, you'd like some clarification on that. But if that's the case, that they're waiving their claims of exemption with respect to that information, you have nothing to complain about there, right? As we've notified the District Court and this court, we have not opened either of those productions. Presumably, the information that they say is in there is in there, the B7E, the B3. But there's one thing that's fatal to the government's claim of mootness there. There's some B6 information. And they say we didn't provide the B6 information. And we explicitly told the District Court in briefing there is certain information. We said what information we want, and we said why we want it. And that is the names of the people who were surveilled under this program. And if you could look back, it's DCF number 33 in the District Court on page 25. We say we want to be able to communicate with our members. These people might be members of Gun Owners of America. Sorry, we appreciate that argument. But as the government tees it up, they agree that there's a separate set of questions as to the PII and the Exemption 6 material. So just on Judge Pillard's question, for the Exemption 3 and 7E, if we were focused just on that, you've argued that the case is in moot as to that material. And can you sort of give us your best argument about why that is? I don't think you can moot a case just by renaming a PDF. It's the same production, whether they call it 14 or 13 or 15, the most recent one. It's the same pages. It has some of the same information. And the District Court said you are not allowed to access that information. This was not about protecting some ethereal production. This is about protecting access to the information. This is information Congress said that ATF should not produce. Do you think the right result, would it be in our power to hold that that claim is moot because it's not covered by the District Court's protective order? Or do you think we would need to remand for the District Court to make that determination? I think this court should vacate the District Court's GAG order. I think that it applies to all the information. I don't think it changes. So if we vacated the GAG order with respect to exemptions 3 and 7E, and the information that they were asserting should be clawed back because covered by those exemptions, that would moot that aspect of the case in your view? If this court were to vacate the District Court's GAG order with respect to 3 and 7E, then yes, we would be able to use that information. The government would have admitted that we can use it. I would agree with that. I think the government already admitted that you used it. Sure. The government may treat judicial orders with a little more cavalierness than private litigants. I don't think it's ATF's prerogative to just declare that it can unilaterally dissolve an order of a court just by re-providing the information. On the filings that we received last week, from your perspective, what's the status of the FOIA production just along these lines? Because we're talking about particular exemptions in the GAG order, but it's kind of hard to understand what the status of, because it seems like, as in many cases that are like litigation, there becomes a role in production. Things get produced along the way. So can you just tell us what the current status of the production is now? I believe that the production has been completed. I believe production 13 was the last one. We haven't heard differently from the government, so that's my understanding, Your Honor. There's also this issue that some of the B6 information, the government says, we pointed to your briefing, the district court pointed to our briefing and said social security numbers. We said we don't want to go up in fraudulent credit cards with people's social security numbers. We have no interest in this information. And the district court said, aha, I get to impose a GAG order on you. And that's the basis of the government's defense here, is that because we agreed that we didn't have any interest in certain information, that we can then have our speech GAG-ed. That was not why we agreed to not use certain information. Our point was that if there is going to be no speech, there can be no harm. It's a little bit of a fine distinction. You're saying if there's going to be no speech, there's no harm. But if there's going to be no speech, there's also no First Amendment suppression. Well, there is, Your Honor, because the district court said you may not. Right, but you've said we have no interest in that speech. And so if I say I have no interest in, you know, uttering hate speech and somebody wants to bring a case against me for hate speech, it's like that's not the vehicle to decide that issue because I actually have no interest in saying the thing. And so it just – that strikes me as a little – I understand what you're saying about the government, but it also seems like it has an effect on the harm that you're claiming. Well, I think the way I frame it is that the burden is on the government every time to justify a restraint on speech, to justify a GAG order with what the Supreme Court says is a state interest of the highest order. Even if there was a risk of Social Security numbers getting published in this case, I don't think that it's even close to that standard. So I understand that you have a distinct interest in keeping free of GAG order, although not in communicating the personally identifiable information that was intended to be redacted but wasn't redacted under Exemption 6, 7C, and 7D. But the district court ruled based on what the court thought was your waiver of any interest in speaking on those exemptions of communicating the information that the ATF wished it had withheld under those exemptions. And then you filed an appeal brief in this court that said nothing challenging that basis of the district court's order. So why have you not completely forfeited that ground on appeal? I think we challenged the entire order in the district court. We said, please don't GAG us, and here we've said we object to the entire GAG order, Your Honor. But you objected on First Amendment grounds. And what I'm saying is that the basis on which she ruled was you've waived any interest in that information. And if you now say, no, we didn't, or that waiver isn't enough because, like, I don't think you addressed it at all. And that is the ground of her decision. So I'm a little puzzled about, again, where that leaves you in terms of the interest you assert. And I do understand that what you seek is a First Amendment ruling, but I'm just not seeing that she ruled on, you know, that she didn't think that you had asserted any interest in that information. You're saying that's wrong, but you didn't say that in your opening brief. We didn't, Your Honor. I mean, the district court's order prevents speech. I don't think there's any. But that gets beyond the question on the basis on which she ruled. But in order to gag speech, Your Honor, you have to have a harm that's going to occur. Right, and she's saying you've asserted no harm. I'm not gagging your speech. The district court's order says we shall and we shall not. That is injunctive relief, as I understand it, and it gags our speech, Your Honor, I believe. Can I just try one way of clarifying this for myself? I mean, if you just read the district court opinion, there is sort of a Part 1 as to PII, and it does effectively say, well, they've consented to the entry of an order against them. And then it moves on and addresses the Exemption 3 and 7e material. They have not consented, but I have authority to do it, and it doesn't violate the First Amendment. And I think what Judge Pillard is asking is we might have expected you in appealing to contest the fact that you had the finding that you consented to entry of the order for one bucket of information. Why isn't that a reasonable thing? The takeaway would be that as to that PII information, we would – the court could say the district court found you consented to entry of judgment on appeal in your opening brief. You didn't contest that. Why shouldn't we rule on that basis? Because I don't think that's what the district court's order does, and I don't think we distinguished in our briefing. I think we were very clear that we objected to the whole thing. And I just – I do want to circle back to the fact that of that B6 PII information, there is a category of it where the government doesn't focus on it in their brief and just says you consented to all these things. The people who were surveilled, their names, their contact information, that's not in the government's list. And if you look back at our briefing in the trial court and in this court, we expressly said we want access to that information. And I don't think the DOJ will get up here and say today that we have access to that information. And isn't it fair to say – so I've read your opposition to the motion for summary judgment. The overriding argument is you, the district court, have no authority of any kind to enter this order. Point two, if you did, it would violate the First Amendment. Even if you disagree with those things, you know, there's some of these records we would agree to destroy, but we have an interest in communicating some of the information. It's sort of your third fallback argument, isn't it? Well, and there's also the equitable argument that this court in HRDC said judges do not have inherent or implied powers, and so the district court said, well, I'll just use a different word, and that way I have equitable powers. But equity has to be tied to righting illegal wrong or enforcing legal right, and there's nothing like that. FOIA does not provide any remedy at all against FOIA requesters. Everything is against the government. To declare that records have been unlawfully withheld, to adjoin records from – and to force an agency to give up records, none of that goes to a FOIA requester. There was no jurisdiction under 1331 to deal with a FOIA claim in front of her. And with respect to the PII, she didn't have to use any authority that was called into question in HRDC because, as she understood it, and I take it you're saying erroneously, as she understood it, you had effectively agreed with the government that you had no First Amendment right, no interest in – I know you distinguish between those two things, but you had no interest in communicating any of the PII. What you were really interested in was the system by which the Brady law, you know, tracks information about people that it's concerned might be not following the law, and that was what you really were interested in. So with respect to the PII, she didn't order any clawback. She didn't invoke that equitable authority to distinguish it from inherent authority. Two things, Your Honor. One, I just want to, again, be very specific with respect to the PII. There is a category of PII that we never disclaimed interest in.  And we do not have access to. And that is? The names and the contact information of the people who were the targets, who were surveilled under this program. And the district court glosses – I'm sorry, the government glosses over that in its brief and said, look at all of these things that the plaintiffs disclaimed interest in. That is not on the list. And you can look again. It's ECF 33 in the district court. It's H25. And I can read it to you. We expressly said what we want and what we want to do with it. We said defendant overlooks the possibility of disclosing this information to the persons who are the subjects of FBI ATF investigations and that these people have an interest in knowing that this occurred and GOA has an interest in communicating with its members and telling them. You're in the plaintiff's response to summary judgment? Yes, ma'am. And which page? H25. All right. The bottom paragraph. So we said we don't want FBI names. We don't want undercover names. We don't want FBI email addresses, ATF phone numbers, Social Security numbers that are in there, that sort of thing. We never said that we do not want the ability to reach out to people who have been surveilled by the government and let them know that that occurred, especially if they're members of our organization. So you said in two pages earlier that the subjects of the investigation, we don't care about birth dates and Social Security numbers. And what you're saying is if you read page 23 together with 25, what you don't say, but we are interested in their names and contact information, but you're saying it's implicit in that paragraph at the bottom of page 25, possibly disclosing this information, meaning the — The fact that they were surveilled. And the fact that you're saying that they had a negative interest to the people who were subject to it is you're disputing that they have a privacy interest, which is really going to the merits of the underlying exemption. Well, the district court, the government, they never asked what we wanted to use this for. We have no interest in publicizing this in a news story that John Smith in Arizona was surveilled by the government. But I do think we have an interest in telling John Smith in Arizona they were surveilled by the government. And that's conspicuously absent from the government's list of things in its brief when it says plaintiffs disclaimed all of these things. That's just not there. So I just want to be very clear that of all the P-6 stuff, that is a category that we never — And that's the only category. That's the only category. I believe so, yeah. The people. Yes. I just want to touch on HRDC a little bit.  you've obviously benefited from this clawback information because FOIA doesn't provide for compelled return or destruction of inadvertently produced information. But if we're balancing open government and we should know what the government is up to, but then you also have this inadvertent production, I'm just curious as to whether you think there's any protection for agencies when they are vigilant and diligent in responding to a FOIA request. And then something like this happens, but they're able to put together a reasonable declaration that, you know, suggests they tried to do everything in terms of stop gaps and not inadvertently produce information. Or do you think we're just kind of limited to this decision that says there's nothing in FOIA that, you know, protects clawback. So therefore, in your circumstance, you win. I think, Your Honor, HRDC says that the judges have no authority to issue a clawback. I think that is very clear. I mean, what HRDC was dealing with was inherent and implied, but again, equitable equity has to be tied to something. A judge doesn't just come into court and say, everybody has to have blue hair tomorrow. There has to be a legal right. There has to be a legal wrong. ATF, there's nothing statutory. Otherwise ATF has no right to demand documents back. And my client, there's no wrong committed by simply receiving an email and opening a PDF from the government that the government voluntarily sent to us. So that's our point about the equitable power that there's. But you also take the position that even if it's an inadvertent production that had an appropriate exemption tied to it, it's still an inadvertent production. So you win. As Judge Moss said in a district court in a similar case, he said litigation mistakes have consequences. And there's a Supreme Court case called Cox Broadcasting Corporation. It says if there are privacy interests to be protected, the government must respond by means which avoid public exposure.  and I'm quoting, once true information is disclosed, the press cannot be sanctioned for publishing it. So that's our position, Your Honor. So if we have a broad ruling that says just sort of full stop, no inherent or equitable authority to order the clawback of inadvertently produced documents, the parade of horribles example on the other side is what about classified material? So the government accidentally turns over classified material. You say, sorry.  I don't say so. Is there a way of distinguishing that? There is of avoiding the bad. And there's a dozen or two dozen First Amendment cases in our prior restraint section. In our brief, that is one of the types of things that the Supreme Court has indicated might be protected. That there was a thing was in New York case. No, if we hold that there's no equitable authority to claw back, you never get to the First Amendment question. So I'm asking. Is there some limit on your theory of the equitable authority of the court that would even allow a court to try to address that information in the first place? I don't know about in FOIA case,  I, there have been other cases where reporters media get access to classified information. I don't off the top of my head know how the government proceeds into court to, to obtain a prior restraint, but I guess it could take those sorts of actions. But I, under FOIA and under HRDC, I don't know that there's any authority. HRDC specifically distinguishes cases in which there's an independent legal basis for keeping the information under wraps. So I think that's an open question. And are the exemption three stuff that they voluntarily provided to us? I guess I think, I don't know. I'm voluntarily providing it to us. I don't know that the court needs to reach that question. Obviously amicus Baltimore would like the court to opine on that. I don't know that that's necessary in this case. So. In your, you pointed to the place, and I think it was the opposition to summary judgment where you said, there's an interest. You had an interest in telling the people who were being monitored that they were being monitored. The district court did not apparently. Understand you to be saying we're not waving PPI with respect to some people. She thought that you were waving it entirely and there's, it's a reasonable reading of your papers. You didn't ask for clarification there. You didn't raise the limits of your waiver before us in the blue brief. If she's treating this as effectively a consent order, do you have any guidance for us on what would be the standard for challenging or altering a consent order? If you said, no, no, this is wrong. What would be your burden? I situation. I don't know that I read this as a consent order, your honor. I think she did. That's what I'm saying. As to that, those categories of information that was claimant names, claimant contact information, other than birth dates and things were just absent from, right. But you said in broader terms in your briefing, you know, ATF reports that redactions personally identifying information of the subjects of the investigation, including birth dates and such screeners, but not, it's not limited to. And then you said neither plaintiffs nor council have any interest in such information and would agree to destroy any such records. So the ATF sentence that's quoted is personally identifying information of the subjects of investigation, including particularly private ones, you know, social security number, but not limited. And then, so what in your brief, you don't say, we don't have any interest in that. We do have an interest in like, you just don't ever say that in the district court is as I read, that's the way I read page 25. You're on page 25 is saying this should not be subject to exemption. It's not really saying, look, by the way, when, when we're just claiming information, one thing we really need, I don't see that anywhere. But anyway, so she maybe was wrong about the extent of your waiver. And what I'm asking is given that understanding the factual scenario, that way that she thought you actually were waving something that you stand before us and say, no, no, we never did. What, you know, if, if she thought she was entering a consent order, what's your burden in saying no, no error, consent order overbroad. Do you have anything for us on that? Off the top of my head. I mean, I think this court still has the power to overturn the district court's injunction as to that. I still think there's, there's a prior restraint argument. I still think that there's an equitable argument is that is what the court was exercising was equity with respect to the exemptions three and 70, which I think with respect to everything, I don't know where else you get the power to enter an order. She was relying on what you thought was your consent. There's a case before her adverse parties, 1331 jurisdiction. She doesn't have to resolve every issue if she thinks you've agreed. And you're saying, no, she didn't. But that, as I was saying, I think that's a separate question, how you challenge her erroneous understanding of your agreement. I just, I still think that that judicial power has to spring from somewhere. I don't think that just because a plaintiff says, I have no interest in something that's completely outside this case and tangential. And the judge says, well, I'm going to enjoin you from doing that. I know it still has to be writing a wrong or enforcing a right. I don't think it just can happen just because even, even if we did come in and say, we agree to all this, I still don't think that gives a judge. The authority has to come from somewhere. All right. Thank you, Mr. Olson. Give you some time for rebuttal. Please support for the government plaintiff's litigating position in district court was that they wanted gun trace data, but we're willing to destroy personally identifiable information contained in an invert disclosure. We all agree. They now have access to gun trace data. And, you know, I think that's in a form they can use freely. So that part of the case is moot. As for the PII, the district court took plaintiffs up on their offer to destroy it. And they didn't say a word about that part of the order of their opening brief. It was only if the government produced the information plaintiffs wanted that they first articulated to this court that they wanted even more, but I think they got what they asked for and it's time for this litigation to come to an end. What is the support for the district court instead of just dismissing the claims with respect to PII as moot? What's the basis for her to enter a protective order? So I think it is consent. I think thinking of this as a consensual order is the right way to think of it. I think that's how the district court thought of it. On Appendix 59, she said, since plaintiffs have already agreed to destroy the personal information, the agency redacted under 67C and 70, the court will order it to do so. So I think that's the basis. And that basis wasn't challenged in the opening brief. And I do think it's broader than, as my friend described, as my friend described, he said they would, they wouldn't use it, but they specifically said they would agree to destroy the records. And they said, we submit the destruction of any such portion of the records would alleviate the harms that the defendant's declaration of allegiance could occur. And the district court said, okay, if you destroy them, then we can move on from this part of the case. In terms of whether there was supplemental briefing after the HRDC case, right? Yes, Your Honor. And I have not seen that supplemental brief from the plaintiffs, but I presume it said you have no authority to enter a clawback order against us. It did, Your Honor. And so if you have that filing in front of you, and then a separate filing that says we don't have an interest and we'll destroy some records, how do you add that up to, we consent to an order against us on half the information in the case? It just seems like a very different point that they were making. I want to address this two ways, sort of doctrinally and practically. I think doctrinally that you have what I read as a sort of clear waiver. And if you want to try to take back that waiver and not, you know, we can argue about whether that's possible, but I think you have to be at least as clear that we are backing up from this position with respect to this information, because they said over and over again. And I think that we have a string site, the district court has a string site to all the times they said that. And they specifically said they were trying to narrow the scope of the case. So a simpler way of asking the question is it seems like there's a strong argument that we will destroy some of this information is very different from we consent to an order that we may not use it and must destroy it. And that makes a lot of sense given this brief. We're talking about page 25, the first 20 pages are saying, you have no authority to enter a clawback order against us. And then it says for the few clawback cases that exist, they look at a few factors and one of those is harm. And they're trying to explain the harm here is low because we're not going to do anything with the most sensitive information. And now that's been flipped into affirmative consent to entry of a district court injunction against you. So I don't agree. I think the clearest point is in the opposition to the protective order, this is at page 30 of the appendix, they say specifically about this whole category of information ATF discusses, personal identifying information of the subjects. They say neither plaintiffs or counsel have any interest and would agree to destroy the records. I think this saying we would agree to destroy it is the important point. And why I think it's important practically that it takes the form of an order saying, okay, destroy it, as opposed to the plaintiffs just voluntarily destroying it. And I don't know whether they've done that or not. But the reason that it's important that that happens practically is Favish, FOIA disclosure to one party is a disclosure to all parties. So even if plaintiffs sit here, say we have no interest in disseminating social security numbers, I don't know what happens if someone else comes and requests this  ATF might try to say Favish doesn't apply, but like there's a real risk there that the fact that it has been disclosed in FOIA means that ATF is powerless to protect this specific information that they released in future cases. And the district court entered, I think, a very sensible order giving effect to their offer to destroy it. But if you disagree, if you think that that was not a reasonable way to read the plaintiff's  I think they still need to say that in their opening brief to preserve that argument, because it is a distinct ground for holding, you know, the district court said I can deal with 6, 7C and 7D easily. And then I'm going to do a bunch of analysis on 3 and 7E. What is her authority for entering the, if we conceptualize it as a consent order, if there's no authority to claw back, what is being resolved there? I mean, I think you can think of it as court sometimes enter consent orders as a way of effectuating like a settlement between the parties. And that's, you know, they don't point to a specific statute or run through like the Merck exchange factors to do that. I'm not saying this was a settlement, but I am saying that plaintiff said specifically, we want to narrow the dispute. We don't care about this. The government clearly didn't want to turn over that. I think you, I think you have something that's basically analogous to that type of order here. And do you think there's a burden on the party who was taken by the district court to have waived to come forward and say, can we move to change that consent order? Or. I think to the extent that plaintiffs thought that the district court misunderstood their briefing, that might've been an appropriate place to move to reconsider or alter or amend the judgment on that basis. I don't know that they have a burden to do that, but I think they certainly have a burden either. And their opening brief to say, the district court got this wrong as a matter of law and the order can't be sustained on that basis or to say, well, okay, we did consent, but the factors justifying, you know, modification of a coercive order are met. A little bit of an odd setup for a forfeiture argument based on the opening brief. Right. Because as just as a practical matter, I can see what the plaintiffs, how they were viewing this. Then when you look at the order, the order does not say consent order as to PII information, a non-consent order as to other, they have an order that applies to all of the mistakenly disclosed information and they come on appeal and say the district court had no authority to enter it. It just wouldn't really occur. You know, if you hadn't tried to moot the case, I don't think that maybe you would have even thought to argue, you know, even if the court had no authority to enter this order, you have to affirm it in part as to the exemption six information. That would be a very strange thing to do. Well, with respect to our trustee, there was a stay stage to this case. Plaintiffs sought a stay of the order, which we opposed on the basis that it was basically some reversal. But in that our state papers, we said specifically we addressed three and seven E, but we said, we don't need to even deal with the six seven C and seven D PII material because you agree to it. And that's in the papers. I don't think that the address that in their stay reply, but they were on notice when they were, it came time to file the opening brief that this was the government's position. So I'm not sure whether that would save them from forfeiture, you know, even without that, but I do think that they were, they were put on notice that that was our position. If we do reach the merits and because we disagree with one of your threshold grounds, does the government concede error? Or are you just not giving us an argument? So we are not advancing an argument on the merits here. Are you conceding error? Only the Solicitor General can authorize confession of error, and he has not done that. So I'm not confessing error, but we have waived any affirmative arguments in favor of preserving the order on, certainly on the grounds we think are moot. Equitable callback or. Yeah, we're not advancing those arguments. Yeah. Another procedural question. The government's longstanding position is that the TR amendment is an effective prohibition on disclosure of NICS data.  Yet in the 14th production, you produced NICS data voluntarily. Can you explain how that came about? Yes. So our position is that the TR amendment prohibits disclosure, and disclosure means to make known something here to forecast secret. I don't think there's such a thing as a redisclosure. I think once it was disclosed in the inadvertent production, that sort of, you know, the TR prohibition fell away there. Okay. And, you know, for the same reason. I don't think that's before us. It is not. But it is question raising. I understand. But I would say the parties, I think, are in violent agreement that they should, that there should be, the plaintiff should have access to the Exemption 3 material here. So I don't think anyone's contesting that here. If it answers any further questions, but if not, the judgment should be affirmed with respect to the PII material, and the appeal should otherwise be suspended. I'm sorry. Do you think it would be appropriate for us, you've already addressed this, I think, but just to rule that the district court relied on waiver with respect to the non-Exemption 3, Exemption 7e information, and the plaintiffs forfeited on appeal any challenge to that? Yes. I think that's the most appropriate way to resolve that issue. Thank you. Thank you. And just bottom line, do you agree that FOIA with respect to this inadvertent production is going to allow the plaintiffs to use whatever information we deemed that was appropriate for the clawback? I'm sorry, Your Honor. I'm not sure if I quite understood that. Well, because of the inadvertent production, and there being no opportunity for a clawback, are plaintiffs able to then just go forward and use the information? Plaintiffs are free to use all of the Exemption 3 and 7e material that has been disclosed. Our position is that plaintiffs cannot use the person identifiable information that is still redacted in the most recent production based on the consent. If you said that there wasn't consent, then I suppose you have to vacate that part of the order and send it back to the district court and figure out what happens. Can I ask one question? Yes, sir. On page 59 of the appendix, the district court does say because plaintiffs have agreed to destroy this information, court will order it to do so. Earlier in the opinion, the district court said although plaintiffs don't claim an interest in using the bulk of it, they object to any order extending restrictions on the use of the material on principle. Isn't that effectively their point? Would you mind telling me what page that first is? Sorry, the first one is on appendix 49. The district court acknowledges that they are objecting on principle, and later. Is that 59? 49 is where the district court acknowledges they're objecting on principle, and 59 is where they say sort of despite that, because they have said they don't mind destroying it, I will use. Yeah, I think that you would have to read that in context. On the next page on 50, the court, again, says plaintiffs have already agreed to destroy the majority of the information at issue, and that says an omnibus to distinguish HRTC. So I don't think you could say that's, you know, the district court sort of it's inconsistent there. I think this is the umbrella section of its analysis, and it might've been a little bit broad there, but on the very next page, it repeats the statement about it. Thank you. I admit, I don't understand exactly. This seems that the government's position is that once this information was disclosed to us, that it was disclosed. So if that's the case, I don't know how you enter a gag order, ordering it that it not be disclosed. And now the government's position is that it reproduced the T heart information on the public record piece that had already been disclosed. And yet we were the only ones that had it, and we were gagged. And the government's position in the district court was that that wasn't disclosure as long as we were gagged. So I don't, that doesn't intuitively make any sense to me. I do agree that we're, I mean, we've been playing a bit of a game of whack-a-mole with the government here. We have objected every time to the district court's entry of this order. I will point to the government's answer to our complaint in the district court, their fourth defense. And I'm quoting the court lacks jurisdiction to reward relief that exceeds that authorized by the FOIA. So that was their position is you can't go beyond FOIA, your honor. But then when it suited them, when they needed a gag order, they said, please go beyond FOIA, your honor. When this case came to this court and we sought a stay and ATF came in and opposed that vigorously. And they said, and I quote, a stay would allow plaintiffs to disseminate the sensitive information information that Congress expressly provided should not be disclosed and then move the case. And the court said, okay, we're, we're not going to stay the case. And then ATF immediately does literally that exact thing. They disseminate the sensitive information that Congress says shouldn't be disclosed and then claim the cases. They claim they did this intentionally. So they're, they're playing fast and loose with the district court, with this court and with Congress. And I mean, I mean, they're making litigation judgments as time goes on about what they,  whether they're going to be better off if they basically settle the part of the case with you. And they, so I'm, I'm not sure that I don't see the inconsistency that you're claiming. I mean, I think their position was that they had authority to get this back. And then they're like, okay, are we going to continue to pursue this case or not?  I think the government has to be held to its position. And if it's position in the district court and in this court is that key card information cannot be disclosed, they can't come in now and say, well, it was already disclosed and no big deal. If they say your honor, you have no authority, but that under FOIA to then say, there's some other authority outside FOIA. And that matters to you. I mean, the result of that change of position is that you got something really important that you wanted. I'm sorry. I don't understand that. You received the information that you most wanted. And as counsel has stood up at the podium today and told us in open court, you may disseminate that information. That's your honor exemption three exemption 70. You may have been unclear before. And I know you said in your brief that you were unclear whether you could given the district court's gag order, but he's made it very clear that that is now information available for you to use and communicate. So. I'm not sure what to make of your dissatisfaction with the government's evolving position. I don't think that that's a fair characterization at all, that that's the information that we most wanted. The only information that we specifically described using was on page 25, where we said we want the, the names and the contact information that people surveilled. And I looked back a little more closely at the language that. On the, that half of the case, but I thought the thing you most wanted was you wanted to know what they were up to in this program under the Brady act, right? You wanted to know why they were keeping information in the data into, in the national prime database about gun owners. It's a little difficult to discuss with you, your honor, specifically what is in there and what we want to use without arguably running afoul of the district court's gag order. I will say that that's the, that's this one specific category of information that we really focused in on in our briefing. I did look back at that language that you were discussing earlier, where we said ATF reports that there's certain personally identifying information. This is on page 23 of that opposition to the summary judgment, personally identifying information, the subjects, including birthdates and social security numbers. So we said. Are we in the appendix or in the separate document? I'm sorry. I don't know what page of the appendix it is. It's the the opposition to summary judgment below that we were looking at ECF 33. Page 23.  But we were, so we were discussing and we said, ATF says there's all of this information about these people, including these things. And then we said, to the extent that that's true, we don't have an interest in specific things. And we said specifically out of all of that, we don't want birthdates and social security numbers. So, you know, could I, in retrospect, have been even more clearer potentially, but I think it's from the face of what we said. And then the next page or two pages later where we say, here's what we would do with this information. I think it's a very clear read that we still wanted that category of B6, of BII. So council, assume for the moment that we agreed with everything you just said. That would amount to when the district court says on appendix 59, because plaintiffs have agreed to destroy all of this BII information, the court will order it to do so. That would amount to showing that that was. I believe. Right. It raises the separate question, which the government has raised of whether you were, you have forfeited that argument of error on appeal by not raising it in your opening brief. And so you would also need to convince us that there is a, you know, justifiable reason for not addressing this error in the district court's opinion in your opening brief. What is that explanation? I think you made the argument quite convincingly. I mean, in our briefing in the district court, we objected on principle when HRDC came out, we filed a supplemental brief and again said, you have no authority to do any of this. I don't know why I, anyone would have focused specifically on this sub sub issue when you're focusing on the first amendment and on HRDC, there is just no authority, your honor. So to try to tease out these nuances, we're doing it now that the government has made an issue of these various subcategories, but our argument has always been across the board on all this. One, one thing I will say about the district court's order. Wait, I thought your position had not been across the board because you just claimed an interest in a lot of PII. And then you continue to assert an interest in what small category, the, the individuals in the, who are being monitored in the database. But we still objected under the first amendment and under the equity argument that the district, even if we consented to get rid of certain information, that is an entirely different animal than having our speech gagged. If there is no speech to be had, I mean, the Washington post in New York times, they said had information about the Maduro raid before it occurred. And they agreed not to publish it. No one was running into court to gag speech. That wasn't going to occur or to claw back that information. One thing I will note your honor about the district court's order is that we're in her opinion. She says that she will order us to destroy certain information that didn't make it into the order. And district courts rule by by orders, not opinions is my understanding. So I don't see anything in the order to destroy anything. So none of that has been destroyed. There's one copy your honor. As there always has been. Is that district court or it doesn't say anything about destroying. And I, and even ATF in their briefing, I think I, I don't have a pin site for you, but said we are not at this time requesting that the information be destroyed. The thing that they asked for was sequester and don't disseminate,  or use for any purpose. You're talking about the court appeals briefing. No, in the district court. That was all they ever sought from the district court was to, to keep it under wraps and not use it for any purpose, but not to destroy. And the district court never ordered any destruction from my understanding for order. When they say not at this time, is that, I mean, there was preliminary relief so that the courts could decide the issue. I don't recall any subsequent request for destructions in the ATF. Right. But this is, I mean, the case is still ongoing, right? So the destruction, I assume would be when the case is no longer ongoing. And you've, I would press. Yes, that's Charles. And yes, I think further. Thank you. All right. Thank you. The case is submitted.
judges: Pillard; Childs; Garcia